## No. 3471.

### STATE OF LOUISIANA ex rel. H. C. WARMOTH v. JAMES GRAHAM, Auditor.

The absence of the Governor from the State for a few hours, or a few days, creates no vacancy in the office, and does not authorize the assumption of the duties, prerogatives and emoluments thereof by the Lieutenant Governor during said absence. It must be, under a proper construction of article 53 of the constitution, such an inability to discharge the duties of the office, as well as such absence from the State, as would affect injuriously the public interest.

It is manifest that the absence of the Governor from the State is to be ascertained on some proof accessible to the public, from which they may with certainty derive the knowledge as to who is authorized to act as Governor of the State. There being no provision of law for the mode in which the Governor is to manifest to the public his absence from the State, it is necessarily left to his discretion, subject to his responsibility to the people.

This court does not think that it was ever contemplated that the movements of the Governor should be watched, with the view that the Lieutenant Governor or Speaker of the House of Representatives should slip into his seat, the moment he stepped across the borders of the State.

APPEAL from the Eighth District Court, parish of Orleans. *Chas. M. Emerson*, Judge of the Third District Court, acting in the absence of Judge Dibble. *Semmes & Mott, Wm. Grant*, for relator and appellee. *Hornor & Benedict*, for respondent and appellant.

LUDELING, C. J. The relator avers that his salary as Governor of the State was due him for the periods from the sixth to the nineteenth of May, 1871, and from the twenty-sixth of June to the seventeenth of July, 1871; that he drew his warrant therefor, on the Auditor of Public Accounts on the twenty-second of September, 1871; that payment of this warrant was refused on the grounds that the relator was absent from the State during said periods, and that the duties and prerogatives of Governor devolved on the Lieutenant Governor, to whom the salary

of Governor for said periods had been paid. There was judgment in favor of the relator and the defendant appealed.

The question to be decided is, does the absence of the Governor from the State for a few hours or a few days create a vacancy in this office, and authorize the assumption of the duties, prerogatives and emoluments thereof, by the Lieutenant Governor, during said absence?

The constitutional provisions on the subject are contained in articles 53 and 54 of the constitution.

Article 53 says : "In case of impeachment of the Governor, his removal from office, death, refusal or inability to qualify or to discharge the powers and duties of his office, resignation, or absence from the State, the powers and duties of the office shall devolve upon the Lieutenant Governor, for the residue of the term, or until the Governor, absent or impeached, shall return or be acquitted, or the disability be removed," etc.

Article 54 declares that the officer discharging the duties of Governor during his administration, shall receive the compensation to which the Governor would have been entitled.

It is evident, if the Lieutenant Governor be authorized to exercise the functions of the Governor during any temporary absence of the Governor from the State, he may also, whenever the Governor is unable to attend to the duties of his office on account of sickness—in case "of inability to discharge the powers and duties of his office." We do not believe this to be the meaning intended by the framers of the constitution. The inability to discharge the duties of the office as well as the absence from the State, spoken of in the article, are such as would affect injuriously the public interest. The mere absence, at Pass Christian, within a few hours' run of the Capital, could not, by any possibility, affect the public interest.

How is the absence of the Governor to be ascertained? It is manifest, that there ought to be some certain proof, accessible to the public, from which they may with certainty derive the knowledge as to who is authorized to act as Governor of the State. As the law makes no provision for the mode in which the Governor shall manifest to the public his absence from the State, it necessarily is left to his discretion, subject to his responsibility to the people. If the interests of the State should suffer in consequence of his prolonged absence, he would be amenable to public sentiment and to the control of the impeaching power of the State.

Some public record should be made of the intended absence, or the Governor should publicly place the Lieutenant Governor in charge of the government, so that the time of absence shall appear of record, and during such absence the acts of the acting governor would be of

570 SUPREME COURT OF LOUISIANA,

State of Louisiana ex rel. Warmoth v. Graham, Auditor:

unquestionable validity. Anything less than this might create confusion and uncertainty. We do not think it was ever contemplated that the movements of the Governor should be watched, with the view that the Lieutenant Governor or Speaker of the House of Representatives should slip into his seat, the moment he stepped across the borders of the State.

It is therefore ordered, that the judgment of the lower court be affirmed with costs.

Rehearing refused.